UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
MOTTEL GOLDSTEIN,

                Plaintiff,                    **MEMORANDUM AND ORDER**
                                                                                                        23-CV-00349 (OEM) (RML)
  -against-

AMGUARD INSURANCE,

                Defendant.
------------------------------------------------------------------------x
ORELIA E. MERCHANT, United States District Judge:

        Mottel Goldstein ("Plaintiff") brings this breach of contract action against Defendant AmGUARD Insurance ("AmGUARD" or "Defendant") seeking coverage under an insurance policy for losses related to a flood that damaged Plaintiff's home on or about December 7, 2020.[1] Complaint ("Compl."), ECF 1. On January 18, 2023, this action was removed from the Supreme Court of the State of New York, County of Kings, to federal court. Before the Court is Defendant's motion pursuant to Federal Rule of Civil Procedure 56 for summary judgment, seeking to dismiss the complaint in its entirety, and for summary judgment in favor of Defendant on its Counterclaims against Plaintiff on the theory that Plaintiff vitiated coverage by violating the concealment or fraud provision of the policy. Defendant's Memorandum in Support of Motion for Summary Judgment ("Def.'s Mem."), ECF 30-15. For the reasons set forth below, Defendant's motion is denied in its entirety.

---

[1] On May 17, 2023, Berkshire Hathaway Guard Insurance Companies was substituted by its corporate entity, AmGUARD Insurance Company.

1

## BACKGROUND[2]

Plaintiff resides in a home located at 1781 45th Street, Brooklyn, New York 11204-1210 (the "Premises") for which AmGUARD issued Homeowner's Insurance Policy Number MOHO150710 (the "Policy") to Plaintiff on June 15, 2020. *See* Plaintiff's Counter Statement of Material Facts ("Pl.'s 56.1 Counter Stmt."), ECF 31-33 ¶¶ 1-2. The Policy was effective from July 20, 2020, through July 20, 2021. *Id*. ¶ 3.

On or about December 7, 2020, Plaintiff's personal and physical property were destroyed by a flood. *Id*. ¶ 6. Plaintiff hired non-party Medina Contractors LLC ("Medina Contractors") to perform repairs on the Premises. *Id*. ¶ 29; Def.'s Ex. L ("Medina Dep."), ECF 30-13 at 18:22-25, 19:1-2. Jonathan Medina ("Mr. Medina"), the main contractor and owner of Medina Contractors testified that he was paid for work performed at the property. Medina Dep. at 25:1-14; *see also* Pl.'s Ex. 2-31 ("Payment Exhibits"), ECF 31 (checks and Zelle payments).

Plaintiff's complaint rests on the assertion that that Defendant had a contractual duty under the Policy to cover Plaintiff for losses, damages, and repair costs due to the flood. *See* Compl. at 5 ¶¶ 16, 22. Defendant has paid Plaintiff insurance proceeds totaling $51,751.50 for his claim.[3] Defendant's Rule 56.1 Statement of Undisputed Material Facts ("Def.'s 56.1 Stmt."), ECF 30-14 ¶ 12. However, Plaintiff asserts that Defendant owes additional monies, giving rise to this lawsuit. Compl. at 5 ¶ 22; *see* Pl.'s 56.1 Counter Stmt. ¶¶ 10-12.

Plaintiff's insurance policy contains a provision prohibiting concealment or fraud. *See* Pl.'s 56.1 Counter Stmt. ¶ 4. The relevant provision in Plaintiff's insurance policy, "Section I –

---

[2] Unless otherwise indicated, the facts are taken from the parties' statements of material facts and annexed exhibits pursuant to Local Rule 56.1. To the extent any fact is disputed, it is so indicated.

[3] The insurance claim is a combination of mitigation, dwelling damages, property damage, loss of property, and damage from loss of usage of Plaintiff's basement. Compl. at 5 ¶¶ 16-22.

2

Conditions (R) of the Policy," "Concealment or Fraud" provides as follows: "We provide coverage to no 'insureds' under this policy if, whether before or after a loss, an 'insured' has:

1. Intentionally concealed or misrepresented any material fact or circumstance;
2. Engaged in fraudulent conduct: or
3. Made false statements; relating to this insurance."

*Id.*; Def.'s 56.1 Stmt. ¶ 4; *see* Decl. of A. Augustus LaSala, Esq., ECF 30-1; Def.'s Ex. A ("Burns Decl."), ECF 30-2 ¶ 6; Def.'s Ex. B., ECF 30-3. Defendant explains that it denied coverage because, it says, Plaintiff submitted fraudulent construction invoices in support of his damages claims and provided false testimony regarding these invoices and the work performed. Def.'s Mem. at 2.

### A. The Two Invoices

The first invoice Plaintiff provided was a text-searchable PDF titled "Invoice for Mottel Goldstein" for $60,000.00 ("$60,000 Invoice"), created by Medina Contractors, that identified the Premises' address, included a job description, and was on "Medina Contractors LLC" and "Johnathan Medina" letterhead. *See* Pl.'s 56.1 Counter Stmt. ¶¶ 30-35.

Plaintiff produced a second invoice titled "Invoice for Mottel Goldstein" for $15,000 ("$15,000 Invoice"). Pl.'s 56.1 Counter Stmt. ¶ 39. During his deposition, Plaintiff stated that the $15,000 Invoice was provided by Medina Contractors as an estimate for the additional repair work that needed to be completed at the Premises; was disclosed as a text-searchable PDF;[4] identified the Premises address; was provided on "Medina Contractors LLC" and "Johnathan Medina"

---

[4] Mr. Medina testified that he never communicated with Plaintiff by text message, neither during the project at the Premises nor at the time of his deposition. Def.'s 56.1 Stmt. ¶ 51.

3

letterhead[5]; included a section titled "Job Description;"[6] was created by Medina Contractors; and that the items listed under Job Description were not completed on the subject premises. *Id.* ¶¶ 40- 46.

### B.    Testimony as To the Invoices

Mr. Medina testified he did not recall Medina Contractors creating any documents related to construction work at the Premises. Pl.'s 56.1 Counter Stmt. ¶ 55. Mr. Medina also testified that he nor anyone else from Medina Contractors created the $60,000 Invoice. Pl.'s 56.1 Counter Stmt. ¶¶ 58-59. However, Plaintiff points out that Mr. Medina's testimony was inconsistent:

> At page 23 of Medina's deposition when asked[,] 'did Medina Contractors prepare estimates for the repair work?['] Mr. Medina answered[,] 'No, I don't remember.' when asked[,] 'Did Medina Contractors prepare invoices for the repair work?' Mr. Medina responded, 'No.' At page 19 of the Medina deposition, when asked 'What was Medina Contractors hired to do,' Mr. Medina answered, 'Okay, to do construction work, I can't remember a lot. . .' . . . At page 25 of the deposition, when asked[,] 'were you and Medina Contractors paid for the work?['] Mr. Medina responded[,] 'Yes.' And when asked how much were you and Medina Contractors paid for the work?['] Mr. Medina stated, 'I don't remember[.] [I]t was many days of work.[']

Pl.'s 56.1 Counter Stmt. ¶¶ 55, 58-59 (emphasis removed); Pl.'s Exhibit C ("Pl.'s Medina Dep.") ECF 31-32 at 23:3-8; *Id*. at 25:3-8.

At his deposition, Plaintiff stated (1) he did not know who created the $60,000 Invoice, (2) he did not create it, and (3) that Medina Contractors created it. Def.'s Exhibit K ("Pl.'s Dep."), ECF 30-12 at 18:17-25, 19:1-3; Pl.'s 56.1 Counter Stmt. ¶ 35. Plaintiff testified he received the $60,000 Invoice from Medina Contractors. *Id.* However, Defendant says Mr. Medina testified

---

[5] Defendant states Mr. Medina's name was misspelled the same way on both invoices as "Johnathan" and on at least one of Plaintiff's checks issued to Mr. Medina. Def.'s 56.1 Stmt. ¶¶ 57, 75, 82-83; Pl.'s 56.1 Counter Stmt. ¶¶57, 75, 82-83. Plaintiff admitted both of these facts. Pl.'s 56.1 Counter Stmt. ¶¶ 57, 75, 82-83.

[6] Defendant points to Mr. Medina's testimony that he was only hired to perform repairs to part of the floors on Plaintiff's first floor. Def.'s Mem. at 4 (citing Def.'s 56.1 Stmt. ¶ 79). Plaintiff admits to this fact but qualifies it by arguing that Mr. Medina's testimony is contradictory, and his inability to remember renders him unreliable. Pl.'s 56.1 Counter Stmt. ¶ 79.

that he never provided Plaintiff with an estimate for additional future work to the floors, which would include the $15,000 Invoice. Def.'s Mem. at 4, (citing Def.'s 56.1 Stmt. ¶ 80). Plaintiff again "admits" this testimony occurred, but notes that Mr. Medina contradicted himself many times during his deposition. Pl.'s 56.1 Counter Stmt. ¶ 80. Medina stated in his deposition that he never saw the $15,000 Invoice prior to the deposition, that he did not prepare the $15,000 Invoice, and that no one else on behalf of Medina Contractors prepared it. Pl.'s 56.1 Counter Stmt. ¶¶ 76-78; Medina Dep. at 40:17-18, 40:19-22.[7]

Plaintiff has not asserted that Medina Contractors definitively created the $15,000 Invoice – rather, Plaintiff stated in his deposition "I assume so" when asked twice about whether Medina Contractors created the $15,000 invoice, Pl.'s Dep. 20:15-19, and that he did not create it himself. Pl.'s Dep. 20:20-25. Additionally, Plaintiff admits Mr. Medina testified that he never provided Plaintiff with an estimate for additional work. Pl.'s 56.1 Counter Stmt. ¶¶ 79-80. Notably Mr. Medina testified that he did not remember if Medina Contractors prepared estimates for the work. Pl.'s Medina Dep. at 23:3-5. Conversely, Plaintiff testified that Medina Contractors prepared estimates for the repair work. Pl.'s Dep. 9:18-20, 10:17-24; Pl.'s 56.1 Counter Stmt. ¶ 29.

### 1. The $60,000 Invoice Line Items

Defendant says Mr. Medina testified that neither he nor Medina Contractors performed four of the line items in the $60,000 Invoice: "Doors," "New Vanity," "Wiring," or "Outlets." Def.'s Mem. at 4 (citing Def.'s 56.1 Stmt. ¶¶ 64-73); Medina Dep. 36:9-25, 37:1-25, 38:1-9; Pl.'s 56.1 Counter Stmt. ¶¶ 62-65. However, Plaintiff asserts that Medina Contractors did in fact perform such repair work including "the painting, molding, doors, the floors, base molding,

---

[7] Defendant incorrectly cited ¶ 76 and ¶ 77, citing to 27:7-9 and 27:10-12, respectively, in Mr. Medina's testimony when it should have cited to 40:17-18 and 40:19-22, respectively.

everything that … was necessary to be done that [was] caused by the water overflow." Pl.'s Dep. 10:10-16.

Regarding the "vanity," Mr. Medina testified that he did not remove or install the vanity. Medina Dep. 36:21-25, 37:1-9; Pl.'s 56.1 Counter Stmt. ¶¶ 66-67. However, Plaintiff asserts that Mr. Medina's own testimony directly contradicted this, when Mr. Medina stated he was hired to repair part of the floors: "[T]he entrance, which was ceramic, and a vanity." Pl.'s Opp'n to Def.'s Mem. for Summary J. ("Pl.'s Opp'n"), ECF 31-34 at 9; Medina Dep. 41:6-20. In response, Defendant argues Mr. Medina never testified whether he removed or installed the vanity itself by citing to Mr. Medina's following statement: "I took off the parquet floor, installed ceramic in the front of the home and below the vanity." Reply Mem. Of Law of Def.'s in Further Supp. of Mem. for Summary J. ("Def.'s Reply"), ECF 32-3 at 6 (citing Medina Dep. 42:15-23).

Regarding the "wiring," Mr. Medina testified that he did not remember removing or installing any wiring at the Premises. Pl.'s 56.1 Counter Stmt. ¶¶68-71; Medina Dep. at 37:10-23. However, there are no facts in the parties' 56.1 statements as to whether Mr. Medina did in fact work on the wiring of the house. *See* Def.'s 56.1 Stmt. ¶¶ 68-71; Pl.'s 56.1 Counter Stmt ¶¶ 68-71. With regard to the "outlets," Mr. Medina testified that he did not remove or install any outlets. Medina Dep. 37:24-25, 38:1-9; Pl.'s 56.1 Counter Stmt. ¶¶ 72-73.

Plaintiff's testimony directly contradicts Mr. Medina's. Plaintiff testified that each of the line items (vanity, wiring, outlet, and doors) in the $60,000 Invoice under Job Description were completed (presumably by Medina Contractors, but Defendants have not submitted the entirety of the deposition testimony). Pl.'s Dep. 28:5-10. Additionally, though Plaintiff admitted to all of the facts in Defendant's 56.1 statement, Plaintiff qualifies his admissions by noting that Mr. Medina did not remember the answer to many questions and contradicted himself repeatedly during his

6

deposition such that his testimony cannot be trusted or used as the basis for Defendant's Motion. Pl.'s 56.1 Counter Stmt. ¶¶ 64-65, 67, 70-71, 73; Pl.'s Opp'n at 7-8.

## STANDARD OF REVIEW

Summary judgment will be granted where the movant demonstrates that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine factual issue exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Kee v. City of N.Y.*, 12 F.4th 150, 158 (2d Cir. 2021) (citation and quotation marks omitted). In determining whether an award of summary judgment is appropriate, the Court considers the "pleadings, deposition testimony, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011).

The movant bears the burden of establishing that there are no genuine issues of material fact. *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013). Once the movant makes such a showing, the non-movant must proffer specific facts demonstrating "a genuine issue for trial." *Giglio v. Buonnadonna Shoprite LLC*, 06-CV-5191, 2009 WL 3150431, at *4 (E.D.N.Y. Sept. 25, 2009) (internal quotation marks and citation omitted). Conclusory allegations or denials will not defeat summary judgment. *Id.* However, in reviewing the summary judgment record, "'the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'" *Sheet Metal Workers' Nat'l Pension Fund v. Vadaris Tech. Inc.*, 13-CV-5286, 2015 WL 6449420, at *2 (E.D.N.Y. Oct. 23, 2015) (quoting *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997)).

When moving for summary judgment, in addition to complying with Federal Rule of Civil Procedure 56, the parties must comply with Local Rule 56.1 of the United States District Courts of the Eastern and Southern Districts ("Local Rule 56"). As the Second Circuit has instructed, the Local Rule 56 "requirement is strict." *T.Y. v. N.Y. City Dep't of Educ.*, 584 F.3d 412, 417 (2d Cir. 2009); *accord Genova v. County of Nassau*, 851 F. App'x 241, 243 (2d Cir. 2021). Local Rule 56.1(c) states:

> Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a corresponding numbered paragraph in the statement required to be served by the opposing party.

Local Rule 56.1(c). To controvert a statement of material fact, a nonmovant must do so by specifically citing to admissible evidence. *See* Local Rule 56(d). Although Plaintiff's Rule 56.1 Statement does not conform strictly to Local Rule 56, the statement, in conjunction with the appended supporting documents and accompanying briefing, enables the Court to identify and evaluate the relevant facts. *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (recognizing Court's broad discretion to overlook deficiencies in the Rule 56.1 statements).

Notably, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson,* 477 U.S. at 247-48 (emphasis in original); *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 90 (2d Cir. 2002). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248.

8

## DISCUSSION

Defendant asserts that it is entitled to summary judgment because Plaintiff violated the insurance policy provision prohibiting concealment or fraud. Def.'s Mem. at 1. It is undisputed that the concealment or fraud provision in the insurance policy issued by Defendant denies coverage "if, whether before or after a loss, an 'insured' has: 1. [i]ntentionally concealed or misrepresented any material fact or circumstance; 2. [e]ngaged in fraudulent conduct; or 3. [m]ade false statements; relating to this insurance." Pl.'s 56.1 Counter Stmt. ¶ 4. Defendant contends Plaintiff intentionally concealed or misrepresented material facts or circumstances by presenting two invoices, one for $60,000 and another for $15,000 (collectively "the Invoices"), as proof of damages. Def.'s Mem. at 3. Defendant asserts the Invoices were not prepared by Medina Contractors, which Plaintiff knew or should have known before exchanging them with Defendant in discovery. *Id*. at 5. Defendant further contends that Plaintiff lied under oath by claiming in his deposition the Invoices were created by Medina Contractors. *Id.* at 3. Thus, Defendant asserts that Plaintiff engaged in fraudulent conduct therefore voiding insurance coverage. *Id.* at 3-7; *see* Def.'s Reply at 8.

Under New York law, an insurance contract is void on the basis of fraud if the insurer can show (1) "the insured willfully made a false and material statement under oath" and (2) did so "with the intent to defraud the insurer." *Staten Island Supply Co., Inc. v. Lumbermens Mut. Cas. Co.*, 02-CV-6390 (DGT), 2005 WL 711678, at *5 (E.D.N.Y. Mar. 29, 2005); *accord Fine v. Bellefonte Underwriters Ins. Co.*, 758 F.2d 50, 52 (2d Cir. 1985); *Deitsch Textiles, Inc. v. N.Y. Prop. Ins. Underwriting Asso.*, 62 N.Y.2d 999, 1001 (1984). A fraudulent proof of loss, such as a written misrepresentation, will undercut recovery of insurance proceeds so long as the misrepresentation was both material and willful. *Harriprashad v. Metro. Prop. & Cas. Ins. Co.*,

09-CV-3105 (ENV) (VMS), 2013 WL 3093118, at *4 (E.D.N.Y. June 18, 2013). Fraud must "be proven by clear and convincing evidence to ensure that unintentional false statements do not form the basis for vitiating coverage." *Id.* (citing *Eurospark Indus., Inc. v. Underwriters at Lloyds*, 567 F. Supp. 2d 345, 352-53 (E.D.N.Y. 2008)).

First, Defendant has failed to establish that there is no genuine question as to whether the Invoices were, in fact, fraudulent. *See* Def.'s Mem. at 5. Defendant relies solely on Mr. Medina's testimony asserting that he, nor anyone at Medina Contractors, created the Invoices. *Id*. at 5; Def.'s 56.1 Stmt. ¶¶ 53-55, 58-60, 76-78; Medina Dep. 26:3-15, 27:7-12. At numerous points in his deposition, Mr. Medina stated that he did not remember various aspects of the job and did not recall communications related to the work performed or the creation of the Invoices.[8] Pl.'s 56.1 Counter Stmt. ¶¶ 53-55, 58-60, 76-78, 80; Pl.'s Opp'n at 8.

The record clearly shows there is a genuine dispute as to the falsity of the invoices. As discussed above, Plaintiff has claimed in his deposition that he did not create the $60,000 invoice, does not know who did, and believes Medina Contractors created it. Pl.'s Dep. 18:17-25, 19:1-3; Pl.'s 56.1 Counter Stmt. ¶ 35. Notwithstanding the high bar for proving insurance fraud under New York law, *see Eurospark*, 567 F. Supp. 2d at 352-33, whether the invoices were falsified

---

[8] Plaintiff argues that Defendant's Motion is "procedurally defective" because it is predicated on inadmissible evidence, "creating an issue of fact" as it relates to Mark Burns' ("Burns") status as "outside counsel" and that Burns failed to submit an affidavit and instead submitted a declaration. Pl.'s Opp'n at 2-3, 11-12; *see* Burns Decl. at 1. Defendant asserts that Plaintiff's argument is a "red herring without merit" and cites to Burns' deposition where Burns testified: "I'm a coverage attorney in the corporate counsel's office." Def.'s Reply at 2-3; Pl.'s Ex. 1 ("Burns Dep."), ECF 32-1 4:12-21. Burns' Declaration states he is a "coverage attorney of AmGUARD Insurance Company." Burns Decl. at 2 ¶ 1. The Court finds that Plaintiff's argument falls flat because the Eastern District of New York Local Rule 1.9 states: "In situations in which any Local Rule provides for an affidavit or a verified statement, the following are acceptable substitutes: (a) a statement subscribed under penalty of perjury as prescribed in 28 U.S.C. § 1746; or (b) if accepted by the Court as a substitute for an affidavit or a verified statement, (1) a statement signed by an attorney or by a party not represented by an attorney pursuant to Federal Rule of Civil Procedure 11, or (2) an oral representation on the record in open court." E.D.N.Y. LR 1.9. The Court finds the representation that Mr. Burns is Defendant's coverage attorney sufficient and notes that Burns' Declaration, pursuant to 28 U.S.C. 1746, is therefore admissible. *See* Burns Decl.

clearly turns on the credibility of both Mr. Medina and the Plaintiff. Credibility is, as in almost all cases, an issue for the trier of fact.[9]

Defendant's argument that, because Mr. Medina's first name – "Jonathan" – was misspelled on both the Invoices and a check signed by Plaintiff, Plaintiff must have fraudulently created the invoices, is unavailing.[10] Def.'s 56.1 Stmt. ¶¶ 57, 75, 82-83; Pl.'s 56.1 Counter Stmt. ¶¶ 57, 75, 82-83; Def.'s Mem. at 4; Medina Dep. 26:16-25, 27:1-6, 40:23-25, 41:1-5. This Court will not grant summary judgment without conclusive evidence as to the falsity of the statements at issue. *See, e.g.*, *Sexstone v. Amato*, 778 N.Y.S. 2d 635 (App. Div. 2004) (granting summary judgment and finding witness statements were "patently false" such that "credibility is properly determined as a matter of law.").

Further, there remain genuine questions of fact whether Mr. Medina had any email or text communications with Plaintiff, whether Plaintiff created the Invoices submitted by Plaintiff in discovery, and therefore whether the Invoices are fraudulent. *See* Def.'s Mem. at 4-5 (citing Def.'s 56.1 Stmt. ¶¶ 50-51); Medina Dep. 21:10-21; *see* Def.'s 56.1 Stmt. ¶¶ 31, 41. In his deposition testimony, Plaintiff claimed he did not recall how he received the Invoices, Pl.'s Dep. 19:16-20, and that Mr. Medina had forwarded Plaintiff text messages and emails in the past. Pl.'s Opp'n at 10. The parties go back and forth in their motion papers over what communications Plaintiff proffered or should have proffered during discovery.[11] Def.'s Mem. at 4-5; Def.'s Reply at 7-8;

---

[9] The same analysis regarding credibility applies to the $15,000 Invoice as the $60,000 Invoice: in both instances Mr. Medina and Plaintiff delivered conflicting testimony about who created the Invoices. Additionally, there remains a question whether Medina Contractors ever provided Plaintiff with an estimate for the additional repair work, i.e., the "parquet floors." *See* Medina Dep. 40:17-18, 40:19-22; *C.f.* Pl.'s Dep. 9:18-20, 10:17-24. *See also* Pl.'s Opp'n at 10.

[10] Plaintiff argues in his opposition papers that Mr. Medina never objected to the spelling of his name and that he accepted the checks tendered by Plaintiff. *See generally* Payment Exhibits.

[11] For example, when Mr. Medina was asked in his deposition about how he communicated with "the owner" he stated that "[Plaintiff's] wife would tell me what I would to have to do." Medina Dep. 20:14-25. Plaintiff's testimony also referenced his wife in his deposition testimony, specifically as it related to the checks/receipts proffered by Plaintiff

11

*see* Pl.'s 56.1 Counter Stmt. ¶¶ 21-26; Def.'s Ex. E ("Def.'s Production Req."), ECF 30-6 ¶ 19. Clearly, there remains a question of fact about what communications occurred between Plaintiff and Mr. Medina. Furthermore, Defendant's insistence that the searchable PDF demonstrates Plaintiff fraudulently created the Invoices, without more, is not conclusive evidence warranting summary judgment in its favor. *See Harriprashad*, 2013 WL 3093118 at *5.

Second, AmGUARD has not established that there is no genuine issue of fact as to whether, as it argues, Plaintiff misrepresented that Medina Contractors completed all of the work set forth in the $60,000 Invoice, specifically four line items: "Doors," "New Vanity," "Wiring," or "Outlets." *See* Def.'s Mem. at 4 (citing Pl.'s 56.1 Counter Stmt. ¶¶ 64-73). Defendant asserts that Mr. Medina testified that he and his company did not perform any of the line items: that he did not work on the "doors," Medina Dep. 36:11-17, "vanity," Medina Dep. 37:6-10, and "outlets." Def.'s Mem. at 4; Medina Dep. 38:3-9. However, Defendant misrepresents Mr. Medina's deposition testimony as it relates to "wiring." *See Id*. at 4. Medina did not claim that he did not work on the "wiring", but as Defendant's 56.1 statement says, he "stated that he did not remember removing or installing any wiring at the Premises." Def.'s 56.1 Stmt. (citing Medina Dep. 37:15-17).

Furthermore, Defendant mischaracterizes Mr. Medina's testimony by claiming he testified the company also did not perform any of the line items on the $60,000 invoice. Defendant's line of questioning asked "Did *you* remove or install" the four line-items. *See* Medina Dep. 36:15-16, 37:6-7, 37:15-16, 38:6-8 (emphasis added). Nowhere in the deposition transcript does Medina or defense counsel clarify whether anyone else from Medina Contractors performed the line-item

---

in his exhibit. Pl.'s Ex. B ("Pl.'s Dep Submitted by Pl.'s"), ECF 32-2, 35:18-23, 36:16-23, 52:8-10, 62:23-25, 63:1-3.

12

tasks.[12] *See generally id*.  Therefore, Defendant has not met its burden.  Even if Plaintiff's statements were in fact misstatements, a material misstatement cannot provide the basis to void a contract unless it was made with the intent to defraud.  *See Harriprashad*, 2013 WL 3093118 at *4.  While AmGUARD points to inconsistencies in Plaintiff's testimony, *see* Def.'s Reply at 9, again, this is a question of credibility that is properly for a jury to decide.  Therefore, there remains a material question of fact whether Plaintiff misstated the repairs performed on his property.

Finally, AmGUARD has not presented evidence that any of Plaintiff's purported misstatements were made with the intent to defraud.  A fact finder, with the opportunity to judge the witnesses' credibility in person, must determine the authenticity of the invoices, and, by extension, the truth of Plaintiff's and Mr. Medina's statements under oath.  *Harriprashad,* 2013 WL 3093118 at *5.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment with respect to Plaintiff's claims and its counterclaims is DENIED in its entirety.

SO ORDERED.

                                                                                            /s/_____
                                                                                            ORELIA E. MERCHANT
                                                                                            United States District Judge

Dated:   November 15, 2024
        Brooklyn, New York

---

[12] The fact Mr. Medina testified he, in his individual capacity, did not work on those line items alone is not sufficient to meet Defendant's burden.  *See* Medina Dep. at 23:23-25.  Neither party provided has provided evidence illuminating which employees worked on the Premises, and what items they worked on.